Martin A. Little, Esq., NV Bar No. 7067
Alexander Villamar, Esq., NV Bar No. 9927
**Howard & Howard Attorneys PLLC**
3800 Howard Hughes Pkwy., Ste. 1000
Las Vegas, NV 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568
E-Mail: mal@h2law.com; av@h2law.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IMC INVESTMENT GROUP CNR, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT RADOVAN, WILLIAM CRISWELL, BRANDYN IVERSON, CRISWELL RADOVAN, LLC, a Nevada limited liability company; CR Cal Neva, LLC, a Nevada limited liability company; and POWELL, COLEMAN and ARNOLD LLP,<br><br>Defendants. | CASE NO. 3:17-CV-581<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM** |

Defendants ROBERT RADOVAN ("Radovan"), WILLIAM CRISWELL ("Criswell"), BRANDYN IVERSON ("Iverson"), CRISWELL RADOVAN, LLC ("Criswell Radovan"), CR Cal Neva, LLC ("CR Cal Neva"), and POWELL, COLEMAN and ARNOLD LLP ("PCA") (collectively "Defendants") respectfully submit this joint motion to dismiss Plaintiff IMC Investment Group CNR, LLC's ("IMC" or "Plaintiff") Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is based upon the record in this matter, the points and authorities that follow, and any argument of counsel entertained by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

This case involves the redevelopment of the historic Cal Neva Hotel in Lake Tahoe (the "Property"). Criswell Radovan acquired the Property in 2013 with the intent of re-opening it after

1

a multi-million renovation (the "Project"). The Project was to be funded through conventional financing and $20 Million of equity. IMC purchased a $6 Million share of the equity and held a seat on the Project's Executive Committee. During construction, the Project's budget was adversely impacted by scope changes, and it became necessary to raise additional capital. Tragically, the Project fell into bankruptcy after these re-financing efforts were sabotaged by a select group of the Project's investors -- lead by IMC.

Unquestionably aware that a lawsuit was headed its way, IMC filed this lawsuit as a pre-emptive first strike against Defendants. Indeed, what IMC conveniently fails to address in its Complaint is that the claims it is asserting against Defendants are nearly identical to those raised and decided <u>against</u> another Project investor after a two-week bench trial before the Honorable Patrick Flanagan, in *Yount v. Criswell Radovan, LLC, et al.*; Case No. CV-16-00767, Washoe Co., Nevada (the "Yount Lawsuit"). *See* Partial Transcript of Proceedings, September 8, 2017, **Exhibit 1** hereto[1]. Importantly, far from finding Defendants to be the evil real estate developers portrayed by IMC in its Complaint, Judge Flanagan entered a sweeping defense verdict in favor of the Defendants, dismissing all of Mr. Yount's claims against Defendants with prejudice, including his common law fraud and securities fraud claims. *Id.*

But this is only the tip of the iceberg. IMC testified for Mr. Yount at the trial through its manager, Brandon Chaney, about how Defendants allegedly defrauded IMC on the Project.[2] Not only did Judge Flanagan find Mr. Chaney's testimony at trial to be highly suspect, biased and not credible, but Judge Flanagan specifically found that IMC and Mr. Yount had intentionally interfered with Criswell Radovan's refinancing efforts with a company called Mosaic, which ultimately lead to the demise of the Project:

> In this case, but for the intentional interference with the contractual relations between Mosaic and Cal-Neva, this Project would have succeeded. That is undisputed. . . .
>
> This Court has documented dozens of email exchanges between Mr. Yount and the IMC in their efforts to undermine the Mosaic loan and there is no more solid evidence of that than in Exhibit 124. That deal was done. That deal has been executed. That deal was in place.

---

[1] Iverson was not a party to the Yount Lawsuit.
[2] Mr. Chaney verified the subject Complaint for IMC.

2

> Mosaic had evidenced its enthusiasm to close this deal. And yet the day that individuals from the IMC went to the Mosaic offices without the knowledge of [Criswell Radovan], that deal was dead. The testimony is unequivocal, there was never an attempt by the IMC to resurrect it, despite the open invitation by Mosaic to reintroduce the loan.
>
> **This Court finds that it was the intent of the IMC to kill this loan, divest [Criswell Radovan] from it shares on the threat of legal, civil, criminal actions for their own benefit and not the benefit of the project.**

*Id.* at 52-53 (emphasis added). Judge Flanagan then entered a multi-million dollar award against Mr. Yount and in favor of Defendants for this intentional interference. *See* Amended Order, **Exhibit 2** hereto.

No doubt seeing the handwriting on the wall, IMC took a page out of the "best defense is a good offense" book by filing this lawsuit against Defendants, with the same attorney who represented Mr. Yount in the Yount Lawsuit. Not surprisingly, after getting blasted by Judge Flanagan in Washoe State Court, IMC sought out a different forum. Without diversity jurisdiction, however, IMC needed to find some other way to get into federal court; hence, the "RICO" claim asserted with its other garden variety fraud claims.

For the reasons set forth below, IMC's RICO allegations do not come close to meeting the heightened pleading standards in *Bell Atlantic Court v. Twombly*[3], which are particularly important in RICO cases to protect defendants against baseless charges of racketeering that are serious, harmful, and expensive to defend. Indeed, IMC is clearly abusing the RICO statute to attempt to shoehorn an ordinary business dispute into a civil RICO claim for the sole purpose of creating federal jurisdiction. No amendment of the Complaint can remedy its defects, and it should be dismissed with prejudice.

Moreover, because this is a garden-variety business dispute -- and not a bona fide racketeering case -- this Court should decline to exercise supplemental jurisdiction over IMC's remaining state law claims.

///

///

---

[3] *Bell Atlantic v. Twombly*, 550 U.S. 554, 555 (2007).

## II.

## STATEMENT OF FACTS

IMC alleges the following facts in its Complaint about the purported RICO violation by Defendants:

> 38. Defendants Radovan, Criswell, Iverson, CR and Criswell Radovan all participated in an enterprise intended to defraud and induce investors into the Cal Neva Lodge, LLC by fraudulent representations and material omissions related to the Cal Neva Lodge management, development and ultimate operation as a resort casino.
>
> 39. Defendants' actions were of such a nature and number that their actions constituted a pattern of racketeering activity by their fraudulent acts of misrepresentation, securities fraud and material omission of relevant fact intended to induce IMC and other investors to invest in the Project and to keep themselves in control of the Project at the detriment of investors. Upon information and belief, the Defendants never intended to complete the project, rather syphon off as much investor's monies in development fees, commissions and misappropriation of Cal Neva Lodge funds. Those fraudulent acts include but are not limited to presenting a budget that was intentionally doctored to be lower than the actual cost necessary to complete the project all in order to make the numbers work to induce investors; by misrepresenting the successful track record of Criswell, Radovan and Iverson in other projects; by representing that the construction budget and expected work necessary to refurbish the Cal Neva Lodge had been thoroughly vetted; by representing that Criswell and Radovan had infused $2 million of their own cash into the Project lake front property which diluted the member's interest and encumbered the project with an additional $4 million in debt; by misrepresenting relationships and agreements with industry connections to induce investors; by purposely stonewalling, lying to and misleading investors to maintain control of the Project to protect their self-dealings; by not disclosing to investors material facts of cost overruns and issues with the Project to protect their position as managers and income streams of and from the Project, by failing to inform investors that prior to the PPM they had pledged investor shares as collateral for the Mezzanine loan, by purposely ignoring and breaching the responsibilities and duties of the Operating Agreement for self gain, and by and taking cash out of the Project without the knowledge and consent of the other members of the LLC including Plaintiff. Defendant's pattern of activity was the direct and proximate cause of Plaintiff's damages in the amount of $6 million and under 18 U.S.C, 1981 et seq.. Plaintiff is entitled to treble damages.

See Complaint, ¶ 38 and 39

In addition to RICO, IMC asserts the following state law claims: (1) Breach of Contract; (2) Breach of Fiduciary Duty; (3) Breach of Duty; (4) Negligence; (5) Fraud in the Inducement;

4

and (6) Piercing the Corporate Veil. *Id.*

## III.

## LEGAL STANDARD

A plaintiff must plead a plausible theory of liability supported by non-conclusory allegations. *Twombly,* 550 U.S. at 555-57. This pleading standard is necessary because substantial discovery costs and the threat of treble damages in antitrust and RICO cases can have an *"in terrorem"* effect, pressuring defendants to settle even meritless claims. *Id.* at 557-58; *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1047 (9th Cir. 2008) ("[D]iscovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case."); *see also In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 370 (3rd. Cir. 2010) ("As other courts have recognized, the concern expressed in *Twombly* is just as applicable to a RICO case ....").

A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[T]he court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Godino v. Countrywide,* 2:11-cv-01216-JCM-PAL, 2011 WL 6131602, at *2 (D. Nev. Dec. 8, 2011) (quoting *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)).

Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements of a claim are not entitled to an assumption of truth." *Braaten v. Newmont USA Ltd.,* 3:15-cv-OO 174-LRH-WGC, 2015 WL 4723644, at *2 (D. Nev. Aug. 10, 2015) (quoting *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009)). Courts should not credit allegations that are merely legal conclusions or are contradicted either by statements in the complaint, documents upon which the complaint relies, or matters subject to judicial notice. *Saldana v. Occidental Petroleum Corp.,* 11A F.3d 544, 551 (9th Cir. 2014); *see also Tradebay, LLC v. eBay, Inc.,* 278 F.R.D. 597, 607 (D. Nev. 2011) (dismissing complaint whose allegations were "vague, conclusory and contradictory").

In Nevada, a civil RICO action must be pled with the same degree of specificity that is called for in a criminal indictment. *Hale v. Burkhardt,* 764 P.2d 866, 869 (Nev. 1988); *See also*

5

*Josephson v. EMG Mortg. Corp.*, No. 2:10-CV-336, 210 WL 4810715, *3 (D. Nev. Nov. 19, 2010) ("A claim for civil racketeering must be plead with specificity.") "A civil RICO pleading must, in that portion of the pleading which describes the criminal acts that the defendant is charged to have committed, contain a sufficiently 'plain, concise and definite' statement of the essential facts such that it would provide a person of ordinary understanding with notice of the charges.") *Hale*, 764 P.2d at 869-70. This means the complaint should provide the information as to "when, where, [and] how" the underlying criminal acts occurred. *Id.* at 869. The complaint must also allege each individual participant's role in the purported conduct. *See, e.g., Edwards v. Marin Park, Inc.*, 356 F.2d 1058, 1065-66 (9th Cir. 2004).

Dismissal with prejudice is warranted where, as here, the claims fail as a matter of law, and granting leave to amend would be futile. *See Noel v. Hall,* 336 F. App'x 592, 594 (9th Cir. 2009); *Toromanova v. Wells Fargo Bank, N.A.*, No. 2:12-cv-00328-GMN-CWH, 2013 WL 1314974, at *4-5 (D. Nev. Mar. 28, 2013).

## IV.

## ARGUMENT

### A.   IMC FAILS TO STATE A RICO CLAIM

IMC's RICO claim is wholly conclusory and deficient as a matter of law. In fact, the Complaint includes less than even a mere formulaic and conclusory recitation of bare elements.

To state a cause of action under RICO, a plaintiff must allege that the defendants, through the conduct of a business enterprise, engaged in racketeering activity that caused injury to the plaintiff's business or property. 18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495-96 (1985); *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

In pleading a pattern of "racketeering activity," at least two predicate acts are necessary (although not necessarily sufficient). *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008)(citing *H.J. Inc. v. Northern Bell Tel. Co.*, 492 U.S. 229, 238-43 (1989)(Although necessary to sustain a RICO claim, the pleading of two predicate acts may not be sufficient because § 1961(5) "assumes that there is something to a RICO pattern beyond the number of predicate acts

involved.'')) "Predicate acts" which comprise "racketeering activity" are defined in 18 U.S.C. § 1961(1)(A) as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than a year." Racketeering activity also includes a variety of "indictable" federal crimes, including mail and wire fraud. *Id.* at § 1961(1)(B).

Here, there is no serious effort to plead the type of specific, supporting facts required by the law. In fact, the RICO cause of action is a mere two paragraphs. This pleading's failure is especially glaring with respect to the alleged RICO predicate acts, which must be pled with the same specificity that would be required if they were asserted as independent claims. *See In re Toyota Motor Corp.*, 75 F. Supp. 2d 883, 918-19 (C.D. Cal. 2011). IMC makes only passing reference to "fraudulent acts of misrepresentation, securities fraud, and material omission of relevant fact [sic] intended to induce IMC . . . to invest. . . ." *See* Complaint, ¶ 39. This is deficient in several material respects.

### 1.   RICO Does Not Apply to Ordinary Business Disputes.

Because RICO applies only to organized long-term criminal activity, it should not apply to ordinary business disputes. *See e.g., Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025-1026 (7th Cir. 1992) ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour"); *Calcasieu Marines Nat. Bank v. Grant*, 943 F.2d 1453, 1463, (5th Cir. 1991) ("Although Congress wrote RICO in broad, sweeping terms, it did not intend to extend RICO to every fraudulent commercial transaction"). Courts have found it to be an abuse of the RICO statute to attempt to shoehorn an ordinary business or contractual dispute into a civil RICO claim. *See e.g., McDonald v. Schencker*, 18 F.3d 491, 499 (7th Cir. 1994); *Midwest Grinding*, 976 F.2d at 1025 ("civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions"). Such an abuse can have deleterious effects on defendants because of the stigmatizing effect of RICO claims and the charges of fraud often used to support them. *See Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990) (recognizing that the mere assertion of RICO claims may have *a stigmatizing effect on*

named defendants); *Katzman v. Victoria's Secret Catalog*, 167 F.R.D. 649, 650 (S.D.N.Y. 1996) (same *quoting Figueroa); In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (recognizing that fraud claims pose threat to business' reputation); *Limestone Dev. Corp. v. Vill. Of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008) (affirming dismissal of RICO claim and warning against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal evidence").

Of significance here, none of IMC's allegations constitute <u>*criminal*</u> predicate acts which can support a RICO cause of action. If anything, IMC merely alleges garden-variety fraud which is not criminal conduct. For this reason, its RICO claims should be dismissed.

### 2. A Predicate Act Based on Alleged Securities Fraud is Prohibited.

IMC makes only passing reference to one predicate act – "Securities Fraud." *See* Complaint, ¶ 39.

The Private Securities Litigation Reform Act of 1995 ("Reform Act") amended RICO to eliminate securities fraud as a predicate act except where the defendant has been criminally convicted of the securities fraud.[4] Amended § 1964(c) now provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court. . . except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.[5]

After the Reform Act was passed in 1995, much of the case law focused on whether the Act could be applied retroactively to bar RICO claims based on securities fraud that occurred before the effective date of the Act.[6]

---

[4] 18 U.S.C.A. § 1964(c); *see also Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045-46 (9th Cir. 2006) (vacating dismissal of claim against defendant who had been convicted of securities fraud, but affirming dismissal of claims against co-defendants who had not been convicted).
[5] 18 U.S.C.A. § 1964(c).
[6] Compare *Scott v. Boos*, 215 F.3d 940 (9th Cir. 2000); *Mathews v. Kidder, Peabody & Co.*, 947 F. Supp. 180 (W.D. Pa. 1996), aff'd, 161 F.3d 156 (3d Cir. 1998); *In re MTC Elec. Technologies Shareholder Litigation*, 74 F. Supp. 2d

8

Under the Reform Act, courts have rejected securities-based RICO claims regardless of the label attached or the validity of the securities claim.[7] Courts have held that the Reform Act bars a RICO claim based on securities fraud even if the plaintiff itself could not bring an action under the securities laws.[8]

---

276 (E.D.N.Y. 1999); 131 *Main St. Assoc., Inc. v. Manko*, No. 93 CV 800, 1998 WL 811875 (S.D.N.Y. Nov, 19, 1998); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68 (S.D.N.Y. 1996); *Gubitosi v. Zegeye*, 28 F. Supp. 2d 298 (E.D. Pa. 1998); Dist. 65 *Retirement Trust for Members of Bureau of Wholesale Sales Representatives v. Prudential Sec., Inc.*, 925 F. Supp. 1551 (N.D. Ga. 1996) (all refusing to apply Reform Act retroactively where doing so would have deprived plaintiff of a claim, e.g., where the securities law claim was time- barred); with *Krear v. Malek*, 961 F. Supp. 1065 (E.D. Mich. 1997); *Rowe v. Marietta Corp.*, 955 F. Supp. 836 (W.D. Tenn. 1997); *Reading Wireless CableTelevision P'ship v. Steingold*, No. 95-CV-785, 1996 WL 741432 (D. Nev. July 30, 1996) (all applying Act retroactively to bar securities-based RICO claims where plaintiff was still able to assert a securities claim). *See also Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 488-489 (8th Cir. 2004); *Kolfenbach v. Mansour*, 36 F. Supp. 2d 1351, 1353 (S.D. Fla. 1999); *Scott v. Steingold*, No. 97-CV-7871, 1998 WL 704287 (N.D. I11. Sept. 30, 1998); *Scott*, 215 F.3d 940 (all holding that Reform Act could not be applied retroactively to bar securities-based RICO claim where alleged misconduct occurred before the effective date of the Reform Act).

[7] The legislative history provides: "The [Conference] Committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the . . . Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Rep. No. 104-369, at 47 (1995). *See also Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327-30 (3d Cir. 1999) (RICO claim based on alleged Ponzi scheme was conduct actionable as securities fraud, and so was barred by the Reform Act); *Aries Aluminum Corp. v. King*, 194 F.3d 1311 (6th Cir. 1999) (unpublished table decision) (fraud in the sale of counterfeit securities constitutes fraud in the sale of securities barred by the Reform Act); *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (affirming dismissal because alleged fraud was in connection with sale of securities, and the sale of securities was not "incidental" to the fraud); *Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045-46 (9th Cir. 2006) (barring RICO claim based on alleged Ponzi scheme, but allowing claim to proceed against defendant who had been convicted of securities fraud); *Bixler v. Foster*, 596 F.3d 751 (10th Cir. 2010) (affirming dismissal of RICO claim based on predicate acts such as mail and wire fraud, extortion, and obstruction of justice where the conduct was in connection with the purchase of a security); *Cyber Media Group, Inc. v. Island Mortgage Network, Inc.*, 183 F. Supp. 2d 559, 578-79 (E.D.N.Y. 2002) (misrepresentations to inflate stock price and induce stock purchase agreement could not support RICO claim because made in connection with purchase or sale of securities); *Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 370-71 (D.N.J. 1999) (mail and wire fraud may not be used as predicate acts under RICO when the alleged fraud is based on conduct that would have been actionable as securities fraud); *Tyrone Area School Dist. v. Mid-State Bank & Trust*, No. 98-881, 1999 WL 703729, at *6 (W.D. Pa. Feb. 9, 1999) (RICO claims alleging mail fraud barred by Reform Act because the conduct underlying the claims was intrinsically connected to conduct that would be actionable under federal securities laws), judgment aff'd, 202 F.3d 255 (3d Cir. 1999) (unpublished table decision); *Renner v. Chase Manhattan Bank*, No. 98-CV-926, 1999 WL 47239, at *5-7 (S.D.N.Y. Feb. 3, 1999) (rejecting securities-based RICO claim even after plaintiff artfully removed all references to the securities laws).

[8] *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F,3d 268, 280 (2d Cir. 2011) (holding that Reform Act precluded RICO claim based on securities fraud even though plaintiff investor could not bring a securities fraud claim based on aiding and abetting); *Howard v. America Online Inc.*, 208 F.3d 741, 749-50 (9th Cir. 2000) (rejecting RICO claim even though plaintiffs lacked standing to bring a securities fraud claim directly, because conduct was nevertheless actionable as securities fraud); *Fezzani v. Bear, Stearns & Co.*, No. 99-CV-0793, 2005 WL 500377, at *5-6 (S.D.N.Y. Mar. 2, 2005) (following case in rejecting claims based on securities fraud even if not committed by defendants); *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F. Supp. 2d 511, 620 (S.D. Tex. 2003) (same); *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 731-32 (D. Del. 2003) (Reform Act applies even if particular plaintiff lacks standing to sue for securities fraud); *In re Ikon Office Solutions, Inc. Securities Litigation*, 86 F. Supp. 2d 481, 486 (E.D. Pa. 2000) (same); *see also Hemispherx Biopharma, Inc. v. Asensio*, No. 98-CV-5204, 1999 WL 144109, at *4-5 (E.D. Pa. Mar. 15, 1999) (noting that purpose of Reform Act was to eliminate securities fraud as a predicate act in general, without regard to whether a particular plaintiff can state a claim for securities fraud).

IMC's sole predicate act -- "securities fraud" -- is barred by the Reform Act. For this additional reason, its RICO cause of action must be dismissed.

### 3. This is Not a Securities Fraud Case.

In the Yount Litigation, the Plaintiff made the same argument that Defendants committed securities fraud; yet, Judge Flanagan correctly dismissed that cause of action, finding this was a real estate investment -- not a securities case. *See* transcript, p. 51:17-22, **Exhibit 1**. Indeed, NRS 90.530 provides a list of transactions that are exempt from the registration requirements of Nevada's Uniform Securities Act. Section 90.530.10 provides that "An offer to sell or the sale of a security to a financial or "institutional investor" is an exempt transaction. The regulation further specifies that an institutional investor includes an "accredited investor as defined under Rule 501 of Regulation D" In this case, the Private Placement Memorandum and Subscription Agreement (cited by IMC in its Complaint) are clear this was a private offering only open to accredited investors, which are exempt from federal and state securities laws. *See* Private Placement Memorandum and Subscription Agreement, attached hereto as **Exhibits 3** and **4**.

### 4. The "Fraudulent" Acts Are Conclusory as to Defendants' Individual Participation.

Aside from the glaring deficiencies noted above, IMC must "specify the time, place, and content of the alleged underlying fraudulent acts, as well the parties involved and their individual participation." *Brown v. Bettinger,* No. 2:15-cv-00331-APJ-PAL, 2015 WL 4162505, at *5 (D.Nev. July 8, 2015) (citing *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004)). IMC does nothing of the sort. In fact, it does not specify which of the five Defendants made the supposed fraudulent misrepresentations and/or omissions, on what date, where they made them, or why they were false. *See Schwartz v. KMPG LLP,* 476 F.3d 756, 764-65 (9th Cir. 2007). ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require(s) plaintiff to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud"); *Paws Up Ranch v. Green,* No. 2:12-cv-01547-GMN-NJK, 2014 WL 4828934, *4 (D.Nev. Sept. 30, 2014) (dismissing RICO claim where "Plaintiffs' general allegations failed to identify the time,

place, or manner of a single specific fraudulent act giving rise to their RICO claim" and "to indicate the individual participation of any of the defendants in the alleged pattern of racketeering activity").

This is yet another reason to dismiss IMC's facially deficient RICO claim.

### 5. IMC Has Not Alleged a Distinct Enterprise.

Because RICO seeks "to prevent a person from using a corporation for criminal purposes," IMC must distinguish between the "person" that committed the predicate RICO violation and the "enterprise" through which that person committed the violation. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-64 (2001). Thus, "[t]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Cedric Kushner Promotions, Ltd.*, 353 U.S. at 161).

IMC fails this step in two different ways. First, IMC simply defines the enterprise to be *all of the Defendants*, and asserts (without any basis) that the Defendants are the agents and alter egos of each other. Courts have long recognized that corporations and their agents are insufficiently distinct to establish a RICO enterprise. *See Living Designs, Inc.* 431 F.3d at 361 (stating that an "enterprise" consisting of [a corporation] and its employees ... would fail for lack of distinctiveness"); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir 1994) ([B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented.").

*Second*, IMC fails to allege a "person" that is distinct from the "enterprise." Instead, IMC seemingly asserts that all of the defendants are *both* the "enterprise" *and* the "person" conducting racketeering activity. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods Liability Litig.*, 826 F. Supp. 2d 1180, 1202 (C.D. Cal. 2011) (holding plaintiffs failed to meet distinctiveness requirement where they alleged that "four named, affiliated corporate Defendants are both the RICO 'person[s]' and the associate-in-fact

'enterprise"). Both of these defects are independently fatal to the RICO claim.

### 6. IMC Cannot Prove Causation Necessary to Sustain a RICO Claim Against Defendants.

To state a claim for violation of RICO, IMC must show that a predicate offense "not only was a 'but for' cause of [its] injury, but was the proximate cause as well." *Hemi Group, LLC v. City of New York*, NY, 559 U.S. 1, 9 (2010). Proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* (citing *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L.Ed.2d 532 (1992). "A link that is too remote, purely contingent, or indirect, is insufficient." *Id.* "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L.Ed.2d 720 (2006).

"A predicate act does not proximately cause an injury if it merely furthers, facilitates, permits or conceals an injury that happened or could have happened independent of the act." *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216 (S.D.N.Y. 2002) (citation omitted). And under hornbook proximate causation law, a defendant is not liable for the plaintiff's harm when the plaintiff's own wrongful conduct is an intervening force which actively operates in producing that harm. *See* Restatement (Second) of Torts § 440–42.

"Failure to allege that the specifically identified RICO predicate acts proximately caused plaintiff's injury is ground for dismissal at the pleading stage." *Vicon*, 201 F. Supp. 2d at 219 (citing *First Nationwide Bank v. Gelt Funding*, 27 F.3d 763, 769 (2d Cir.1994)).

The Supreme Court has dealt with proximate causation under RICO in three more recent decisions. Each is binding here.

First, in *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992), the plaintiff ("SIPC") brought a RICO claim against defendants whom SIPC alleged had manipulated stock prices. SIPC insured customers of certain registered broker-dealers in the event the broker-dealers were unable to meet their financial obligations to investors. *Id.* at 261. When the conspiracy by the stock manipulators was detected, stock prices collapsed, and two broker-dealers were unable to meet their obligations to their customers

resulting in SIPC having to pay customers $13 million. *Id.* at 262-263.

The Supreme Court explained that the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Id.* at 268. The Court held that SIPC could not recover against the defendants because it could not establish that it was injured "by reason of" the alleged fraud. According to the Court, the defendants' alleged conspiracy directly harmed only the broker-dealers, not SIPC. SIPC's injury was "purely contingent" on that harm and "too remote" to satisfy RICO's direct relationship requirement:

> [T]he link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers. That is, the conspirators have allegedly injured these customers only insofar as the stock manipulation first injured the broker-dealers and left them without the wherewithal to pay customers' claims… The broker-dealers simply cannot pay their bills, and only that intervening insolvency connects the conspirators' acts to the losses suffered by the nonpurchasing customers and general creditors.

*Id.* at 271.

In the second Supreme Court case, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 454-455, 126 S. Ct. 1991, 1992, 164 L. Ed. 2d 720 (2006), Ideal filed suit for violation of RICO claiming that its competitor National failed to charge New York's sales tax to cash-paying customers, allowing National to reduce its prices without affecting its profit margin; and that it submitted fraudulent state tax returns to conceal the conduct, all which caused Ideal to lose "significant business and market share." The Supreme Court found that Ideal could not establish causation because "[t]he direct victim of this conduct was the State of New York, not Ideal. It was the State that was being defrauded and the State that lost tax revenue as a result." *Id.* at 458. The Court further reasoned that the alleged harm to Ideal (loss of business and market share) could have occurred for any number of reasons not related to National's fraud:

> National, however, could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud. It may have received a cash inflow from some other source or concluded that the additional sales would justify a smaller profit margin. Its lowering of prices in no sense required it to defraud the state tax authority. Likewise, the fact that a company commits tax fraud does not mean the company will lower its prices; the additional cash could go anywhere from asset acquisition to research and development to dividend payouts

\*\*\*

> Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices.

*Id.* at 458-59.

The Court held that "[t]he element of proximate causation recognized in *Holmes* is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. It has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws." *Id.* at 459-60.

Finally, a similar conclusion was reached by the Supreme Court in the third case, *Hemi Group, LLC v. City of New York, NY*, 559 U.S. 1, 130 S. Ct. 983 (2010). In that case, the City of New York sought to recoup lost tax collections that it traced to alleged RICO violations of an out-of-state cigarette vendor. 599 U.S. at 6-7. Under the City's theory, the out-of-state vendor committed predicate acts by failing to disclose to New York State the identities of New York State purchasers (as required by the Jenkins Act), thereby preventing the State from reporting to the City the names of purchasers that resided in the City, resulting in the City being unable to collect any unpaid taxes from those purchasers. *Id.*

The Court began its evaluation of the City's RICO claim by stating that a civil RICO plaintiff must show that the RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." Id. (quoting Holmes, 503 U.S. at 268). In this vein, the Court noted that "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step," and this "applies with full force to proximate cause inquiries under RICO." Id. at 10 (quoting Holmes, 503 U.S. at 271-272). Thus, "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm," and not on foreseeability. *Id.* at 12.

Against this backdrop, the Court found that the City did not show that its injury of lost tax revenue was caused "by reason of" the defendant out-of-state vendor's unlawful failure to report its sales of cigarettes to New York residents. *Id.* at 11. Instead, the New York City purchasers'

failure to pay taxes was the reason for the City's harm. *Id.* at 11. The Court found that the City's theory "requires that we extend RICO liability to situations where the defendant's fraud on the third party (the State) has made it easier for a fourth party (the taxpayer) to cause harm to the plaintiff (the City)." *Id.* The Court declined to "stretch the causal chain of a RICO violation" in such an unprecedented fashion. *Id.*

Here, IMC cannot establish that its alleged injury (loss of its investment through the bankruptcy) was directly caused by Defendants' allegedly fraudulent conduct. Instead, it was caused by the inability of the Project to obtain additional financing to complete the Project. Not only was this a known and accepted risk (*see* **Exhibits 3 and 4**), but a finding has already been made that this failure was caused by IMC's own interference. Indeed, as Judge Flanagan correctly noted, IMC's alleged harm stems directly from its own intentional interference with the contractual relations between Mosaic and Cal Neva, but for which the Project would have succeeded. *See* **Exhibit 1**, Transcript, pp. 52, 53. Therefore, IMC cannot establish that Defendants' alleged predicate offense proximately caused its supposed injury, and its RICO claim must be dismissed.

### B. THE COURT SHOULD REFUSE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER IMC'S STATE LAW CLAIMS

Without the RICO claim, IMC's Complaint includes only state-law claims that are proceeding in this Court based on supplemental jurisdiction. Supplemental jurisdiction is a doctrine of discretion, not of right. *Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997). The court may decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Here, the Court should refuse to exercise supplemental jurisdiction for a number of reasons. First, without the RICO claim, there are no federal claims pending before this Court.

Second, Plaintiff's remaining claims implicate only issues of state law, including the interpretation of the subject contract documents. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Third, the decision not to exercise supplemental jurisdiction over state-law claims is also informed by the values of judicial economy, convenience, fairness, and comity. *Acri v. Varian Assocs*, 114 F.3d 999, 1001 (9th Cir. 1997). The Supreme Court stated that "in the unusual case in which all federal-law are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Here, the court and the parties have not committed much in the way of resources to litigating this case in federal court such that remand would be wasteful. No discovery has been performed, and it is obvious that IMC is forum shopping, having just been outed by Judge Flanagan for interfering with the Project's financing.

For all of these reasons, the Court should decline to exercise supplemental jurisdiction over IMC's remaining state-law claims.

## V.
## CONCLUSION

For the reasons set out above, Defendants request that the Court dismiss IMC's Complaint with prejudice.

DATED this 27 day of November, 2017.

HOWARD & HOWARD ATTORNEYS PLLC

By: _____
Martin A. Little, Esq., #7067
Alexander Villamar, Esq., #9927
3800 Howard Hughes Parkway, #1000
Las Vegas, Nevada 89169
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

This will hereby certify that I am employed in the County of Clark, State of Nevada, am over the age of 18 years and not a party to this action. My business address is that of Howard & Howard Attorneys PLLC, 3800 Howard Hughes Parkway, Suite 1000, Las Vegas, Nevada 89169.

This is to certify that on November 27, 2017, I electronically filed the MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will cause the document to be served upon the following counsel of record:

Richard G. Campbell, Esq.
The Law Office of
 Richard G. Campbell, Jr., Inc.
200 South Virginia Street, 8th Floor
Reno, NV 89502
Telephone: (775)-686-2446
Facsimile: (775) 997-7417

*Attorneys for Plaintiff*

I certify under penalty of perjury that the foregoing is true and correct, and that this Certificate of Service was executed by me on November 27, 2017 at Las Vegas, Nevada.

*/s/ Agnes R. Wong*
An Employee of HOWARD & HOWARD ATTORNEYS PLLC

4827-6505-0455 v.1
4827-6505-0455, v. 1

17