THE LAW OFFICE OF RICHARD G. CAMPBELL, JR. INC.
RICHARD G. CAMPBELL, JR. (Bar No. 1832)
200 S. Virginia Street, 8th Floor
Reno, NV  89501
Telephone: (775) 686-2446
Facsimile: (775) 686-2401
rcampbell@rgclawoffice.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| IMC INVESTMENT GROUP CNR, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT RADOVAN, WILLIAM CRISWELL, BRANDYN IVERSON, CRISWELL RADOVAN, LLC, a Nevada limited liability company; CR Cal Neva, LLC, a Nevada limited liability company; BRUCE COLEMAN; POWELL, COLEMAN and ARNOLD LLP; DAVID MARRINER; MARRINER REAL ESTATE, LLC, a Nevada limited liability company;  HEATHER HILL and LISA PACEY,<br><br>Defendants. | CASE NO.  3:17-CV-00581 |

**OPPOSITION TO MOTION TO DISMISS**

Plaintiff IMC INVESTMENT GROUP CNR, LLC ("IMC"), by and through its undersigned counsel, hereby files its *Opposition to Motion to Dismiss* in the above entitled matter.

I.    INTRODUCTION

Plaintiff is an investment group that in 2014 invested $6 million into the Cal Neva Lodge LLC as part of a solicitation for funds under a Private Placement Memorandum ("PPM") that ultimately raised $18 million, which was to be used for development and refurbishment of the

1  historic Cal Neva Lodge at Lake Tahoe, Nevada.  Robert Radovan, William Criswell and Brandy
2  Iverson were the principals in several entities that were used to solicit development funds and act
3  as project managers for the project, specifically Criswell Radovan LLC and CR Cal Neva Lodge
4  LLC.  The developers also formed Cal Neva Lodge LLC as the entity that would own the project
5  and the entity where investors' money would be deposited. CR Cal Neva LLC appointed itself as
6  the manager of the Cal Neva Lodge LLC authorizing it to collect monthly management fees of
7  $60,000 as well as giving itself $2 million of equity into the project. The Plaintiff made its
8  investment based on representations made by the developers in the PPM documents, numerous
9  email communications, including documents sent via drop box, and oral representations, all which
10 painted a bright picture that the $20 million raised under the PPM along with two loans to the
11 project of approximately $32 million was more than enough to fund the project to completion; that
12 the budget for the project had been thoroughly scrutinized and was iron clad; and, that the
13 developers had a successful track record with other similar development projects.  That façade
14 continued throughout the course of the project through email and other written correspondence that
15 assured the project was on schedule for completion in December 2015 and on budget. During the
16 summer of 2015 the project started to incur significant cost overruns that were close to 60% over
17 the budget that the CR Defendants had represented was a sure thing.  However, by August of 2015
18 the project was in serious trouble with cost overruns that could result in the contractor walking off
19 the job.  Without a refinance of the project that would add over $15 million in debt to the project,
20 the work on the Cal Neva would stop by the end of the year. Knowing of the impending crisis
21 facing the project, CR Cal Neva sold one of its shares for $1 million without telling the other
22 investors or seeking approval of the sale which was required under the Operating Agreement
23 governing the members of the Cal Neva Lodge LLC.  Because of the lack of funds to continue the
24 project, work stopped at the end of 2015. At that same time the contractors were owed over $9
25 million, the first and second loan holders were threatening foreclosure and potential lenders for
26 takeout financing were not stepping forward.  In June of 2016 the Cal Neva Lodge filed a Chapter
27 11 bankruptcy which culminated in a bidding process for the property wherein a bidder bid in for
28 the property out of bankruptcy at a price that would in the equity investors under the PPM losing

their entire $18 million if the bid is finally approved by the Bankruptcy Court.

II.     ARGUMENT

Defendants' motion to dismiss under FRCP 12(b)(6) seeks dismissal of Plaintiff's claim under 18 USC Sections 1961-1968, commonly referred to as a RICO claim. Defendants' argument in support of its motion is that Plaintiff has failed to meet the pleading requirements under Federal law so as to substantiate its RICO claim. Defendants have inserted numerous representations in their motion relating to a case filed in State Court wherein another investor, who also lost his $1 million investment into the Cal Neva Lodge LLC. Defendants reference to the record in that case is an attempt to shift the blame of the failed development to the Plaintiffs. As such, since Defendants have inserted matters outside of the complaint in their motion, the motion should be treated as a motion for summary judgment under FRCP 56. The standard now governing this motion as one for Summary Judgment is that the court should only grant the motion if the movant can show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

a.     Pleading standards.

*Bell Atlantic Corp v. Twombly*, 550 US 455 (2007) sets forth the general pleading requirements for Federal Court complaints. While a Complaint attacked by a rule FRCP 12(b)(6) motion does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds for his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of a cause of actions elements will not do. Id at 550 U.S. 458. To state a cause of action for RICO a Plaintiff must allege that the Defendants, through the conduct of a business enterprise, engaged in a racketeering activity that caused harm to Plaintiffs. The heightened pleading standards for a RICO claim also require that at least two predicate acts are necessary to show a pattern of racketeering activity. *Brown v. Cassens Transportation Company*, 546 F.3d 347, 354 (6th Cir 2008). Predicate acts that fall within the definition of racketeering activity are listed in 18 U.S.C. Section 1961 and consist of numerous crimes that are prosecutable under either state or federal law. To bring a civil RICO action, no conviction of the underling crime is necessary, with the exception of securities fraud. *Sedima SPLR v. Imrex Co.,* 473 US 479, 488 (1985).

Defendants' attack on Plaintiff's complaint primarily alleges that the complaint is not fact specific as to the predicate acts required for a RICO claim.

  b. The allegations in the Complaint must be viewed in a light most favorable to Plaintiff.

Since Defendants have chosen to rely on evidence outside of the complaint, FRCP 56 and summary judgment standards require that the record be viewed in a light most favorable to the non-moving party. *Butler v. Bogdanovich*, 101 Nev. 339, 451, 705 P2d 662 (1985). The fraudulent acts that Plaintiffs allege as grounds for a RICO claim allege with specificity that Criswell, Radovan and Iverson intentionally doctored the project budget lower than the actual costs that was necessary to complete the project so as to induce investors to give Criswell Radovan $20 million, that Criswell, Radovan and Iverson misrepresented their successes with other developments, that Criswell, Radovan and Iverson misrepresented that they had infused $2 million of their money into the project, among a plethora of other misrepresentations and omissions. Complaint paragraph 39. The common facts incorporated into all of the cause of action in the complaint allege that the Defendants made these fraudulent misrepresentations and omissions over a period of time, starting during the Plaintiffs, due diligence in February 2014 and later with the misrepresentations contained of the PPM and offering documents provided to Plaintiffs. Then over the course of several months starting in the Spring of 2015 and up until February 2015, additional fraudulent misrepresentations or material omissions were sent to Plaintiffs, intending to keep Plaintiff and other investors in the dark in order as to the actual status of the project so that Defendants could control all aspects of the project. Complaint at Paragraphs 9-34.

  c. The Predicate Acts.

Plaintiffs in their RICO cause of action do not allege that the predicate acts constituting racketeering activity were solely securities fraud but included fraudulent acts and misrepresentations and material omissions of relevant facts intended to induce Plaintiffs to invest in the project and to keep the Defendants in control of the project at the detriment of other investors. Complaint at paragraph 39.

  Defendants' use of the internet to send the PPM documents, shareholder updates, status

1  reports, financial reports and the like, constitute mail and or wire fraud.

2  A RICO claim must be based on predicate acts that are delineated as certain crimes under federal or state law. Two of those crimes that serve as predicate offenses are mail and wire fraud. 18 USC 1341 prohibits the use of the U.S. Mail to execute any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations or promises. *McNally v. United States*, 483 U.S. 350 (1987). 18 USC 1343 is similar with regards to a scheme to defraud except that the communication is transmitted by wire. *United States of America v. Frey*, 42 F.3d 795 (3rd. Cir. 1994). Use of the internet to transmit documents falls under the wire fraud statute. *United States v. Cooper*, 654 F.3d 1104, 1119 (10th Cir. 2011).

Throughout the course of Plaintiffs dealing with Criswell Radovan, documents such as the offering memorandum, investor updates, status reports, financial updates and general communications regarding the status of the project were sent to Plaintiff electronically. See Affidavit of Brandon Chaney attached hereto. All of Plaintiffs general allegations of facts common to all causes of action as well as the specific RICO allegation, specify in detail how the individual Defendants, through a course of action involving misrepresentations in the PPM documents, misrepresentations in communications such as investor updates and other communications were a scheme or artifice intended to defraud the Plaintiff.

    d.    Plaintiff's complaint is sufficient as to the specificity required for a RICO claim as to time, place and content of the false representation as well as the identity of the parties.

Defendants rely on *Brown v. Bettinger*, No. 2:15 cv 00331 APJ PAL WL 4162505 (D Nev., July 8 2015) citing *Edwards v. Marin Park Inc.*, 456 F.3d 756 (9th Cir. 2004) for the authority that RICO claims need be specific as to time and place of the fraudulent acts as well as the content and person making fraudulent communications. Brown involved a RICO claim where the Plaintiff was allowed leave to amend its original complaint to be more specific as to the allegations involving the RICO claim, specifically the content of certain documents, but failed to do so as to the specifics of the underlying allegations and thus the motion to dismiss was granted. In this case the Plaintiffs allege in detail that Criswell, Radovan and Iverson engaged in acts intended to defraud the Plaintiffs, starting in February 2014, prior to Plaintiff's investment and then with the PPM, dated

1  April 2014, and associated documents namely the Confidential Offering Memorandum and the
2  Operating Agreement, with representations made in February 2015 that the project was on time and
3  on budget, and with the response from Mr. Radovan in October 2015 to the Plaintiff where Radovan
4  promised to turn over a new leaf and start providing information.

5     e.     The Complaint has alleged a distinct enterprise.

6  Defendants rely on *Cedric Kushner Promotions Ltd v. King*, 533 US 158, 164 (2000) for
7  the proposition that Plaintiffs have not been specific enough as to the distinction between the
8  individual Defendants Criswell, Radovan and Iverson and the corporate Defendants, Criswell
9  Radovan LLC and CR Cal Neva LLC. In the *Cedric Kushner* case the Supreme Court reviewed a
10 district court decision that dismissed a RICO claim because the District Court was of the opinion
11 that the plaintiff failed to show the existence of two separate entities, a person and a distinct
12 enterprise.  The Supreme Court reversed holding that Section 1962(c) requires no more than the
13 formal legal distinction between a person and an enterprise, namely incorporation, and held that
14 the corporate owner/employee, a natural person is distinct from the Corporation itself, a legally
15 different entity with different rights and responsibilities due to its different legal status. The Court
16 can find nothing in RICO that requires more separateness that that. Id at 533 US 1.

17 18 USC Section 1962 makes it unlawful for any person employed or associated with an
18 enterprise to conduct or participate directly or indirectly in the conduct of such enterprise through
19 a pattern of racketeering activity and one must only participate in the operation or management of
20 the enterprise itself to be subject to RICO liability.  *Reves v. Ernst and Young*, 507 U.S. 170 177,
21 (1993).

22 In Plaintiff's complaint, both in the general allegations common to all causes of action and
23 the specific RICO claim, there are allegations that the individual Defendants engaged in fraudulent
24 activity intended to induce investors to part with their money which benefitted the LLC's owned
25 and operated by the individual Defendants.

26    f.     Defendants fraudulent actions under RICO were the proximate cause of Plaintiffs
              damages.
27

28 Defendants claim that IMC cannot prove that the Defendant's actions under RICO were the

1  proximate cause of its injuries because they allege IMC was at fault for the Cal Neva Lodge
2  plunging into bankruptcy. The Defendants base this argument on some comments by Judge
3  Flanagan in a state court action where Stuart Yount, one of the other investors in the Cal Neva
4  Lodge LLC who lost his $1 million investment, sued Criswell and Radovan and their related
5  business entities. That case did not deal with the issue of whether IMC was responsible for the
6  Mosaic loan not closing and IMC was not a party to the litigation. As background, as set forth
7  above, Criswell and Radovan were attempting to secure take out financing since the project was far
8  over budget and on the verge of being shuttered if additional funds could not be garnered to finish
9  the project. Mosaic was one of the lenders looking at a refinance. Radovan was negotiating with
10 Mosaic for this loan but Mosaic was unable to get information from Mr. Radovan to complete its
11 due diligence and thus notified Radovan that it was not going forward with the loan. See Affidavit
12 of Brandon Cheney with attached Exhibit 1, an email string from Mosaic. Judge Flanagan
13 mistakenly believed that IMC and Mr. Yount were somehow responsible for the demise of the
14 Mosaic loan.

15    Judge Flanagan's decision was never reduced to a written order in light of his untimely
16 death. The parties to that case, which is now before Judge Polaha, are currently briefing the issue
17 as to what Judge Polaha should do as far as entering an order, including the possibility that a new
18 trial should occur. Judge Flanagan's oral order at the close of trial found that Plaintiff's claims
19 should be dismissed but then in a bizarre action entered judgment against the Plaintiff on a
20 counterclaim for interference with contractual relations, a counterclaim that was never asserted in
21 any of the Defendants pleadings.

22    This Court should not rely on the quotes from the bench by Judge Flanagan. It is a general
23 rule that courts should not take judicial notice of the records in another and different case even
24 though the cases are connected. *Occhiuto v. Occhiuto*, 97 Nev. 143, 625 P.2d 568 (1981). While
25 there are exceptions to the general rule the *Occhiuto* case relied on *In Re Adoption of K.B.I.D.*, 417
26 S.W. 2d 702 (Mo. Ct. App. 1967) for when the general rule should be relaxed. The *In Re Adoption*
27 court set forth the reasoning for the rule that courts should not take judicial notice of the records
28 and facts in on action in deciding a different one because a party is entitled to have the merits of

1  his case reviewed upon the evidence lawfully introduced at trial of his claim or defense in the trail
2  court. Id at 417 S.W. 2d 704. This Court should not rely on Judge Flanagan's comments that were
3  not at issue in this case, where IMC was not a party to the litigation and where there has been no
4  final judgment in the case. Furthermore, since Defendant has introduced evidence outside of the
5  complaint, this court must consider all of the representations of the Plaintiff and the employees of
6  Mosaic in a light most favorable to Plaintiff.
7       CR Cal Neva LLC and Criswell Radovan LLC were the managers of the Cal Neva Lodge
8  LLC and as such put CR Cal Neva in the position to collect management fees and an equity position
9  into the LLC. The Plaintiff lost its $6 million, not because Mosaic did not go forward with the loan,
10 but because through the individual Defendants' pattern or racketeering intended to benefit CR Cal
11 Neva LLC and Criswell Radovan LLC, Plaintiff was intentionally defrauded into investing its
12 money into an enterprise that was doomed from the start because of Defendants' self-serving
13 actions to benefit themselves, not to successfully complete the refurbishment of the Cal Neva
14 Lodge. But for the Defendants fraudulent actions Plaintiff would not have lost its $ 6 million.

15 III.    CONCLUSION

16      But for the individual Defendants Criswell, Radovan and Iverson's scheme and artifice to
17 induce Plaintiff to invest $6 million into the Cal Neva Lodge LLC, so that CR Cal Neva LLC and
18 Criswell Radovan LLC could tap into the investors funds to benefit their own self- interest through
19 collection of development fees and sale of their shares in the enterprise, the Plaintiff would have
20 never invested in the project. Plaintiffs allegations in its Complaint sets for the requisite elements
21 to state a RICO claim and Defendants' Motion to Dismiss should not be granted.

22 DATED: December 19, 2017.         THE LAW OFFICE OF RICHARD G.
23                                                    CAMPBELL, JR. INC.

24                                        By: /s/ Richard G. Campbell, Jr.
25                                             RICHARD G. CAMPBELL, JR.
                                            Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

**AFFIRMATION**
**Pursuant to NRS 239B.030**

The undersigned does hereby affirm that the preceding document, filed in this case: **OPPOSITION TO MOTION TO DISMISS**;

☒ Document does not contain the social security number of any person

- OR -

☐ Document contains the social security number of a person as required by:

☐ A specific state or federal law, to wit:

_____
(State specific state or federal law)

- or -

☐ For the administration of a public program

- or -

☐ For an application for a federal or state grant

Dated: December 19, 2017.        THE LAW OFFICE OF RICHARD G.
                                                     CAMPBELL, JR. INC.


                                                By: /s/ Richard G. Campbell, Jr.

**PROOF OF SERVICE**

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is The Law Office of Richard G. Campbell, Jr. Inc., 200 S. Virginia Street, 8th Floor, Reno, NV 89501. On December 19, 2017, I served the following document(s):

**OPPOSITION TO MOTION TO DISMISS**

☐ **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ **BY HAND:** by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Reno, Nevada addressed as set forth below.

☐ **BY EMAIL:** by causing the document(s) to be electronically served.

☐ **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐ **BY PERSONAL DELIVERY:** by causing personal delivery by __Reno Carson Messenger Service__ of the document(s) listed above to the person(s) at the address(es) set forth below.

☒ **BY E-MAIL/ELECTRONIC FILING SYSTEM:** by causing the document(s) to be electronically served via the court's electronic filing system to the following attorneys associated with this case.

Martin A. Little
Howard and Howard
3800 Howard Hughes Pkwy, Ste 1000
Las Vegas, Nevada 89169

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 19, 2017, at Reno, Nevada.

/s/ Danielle Bleecker